OPINION
Robert W. Hester is appealing from his conviction of driving under the influence of alcohol, a violation of Xenia Ordinance 434.01(a) (1), following his plea of no contest to the charge. He had been charged with three other driving offenses, but these were dismissed at the request of the prosecutor and pursuant to a plea bargain. Plea hearing, Tr. 3-4.
Hester brings the following sole assignment of error:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE EVIDENCE, BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER HAD PROBABLE CAUSE TO BELIEVE THAT APPELLANT WAS DRIVING UNDER THE INFLUENCE.
Hester's argument in support of the assignment of error is that when the arresting officer, Chris Stutes of the Xenia Police, testified as to the results of the horizontal gaze nystagmus (HGN) test administered to Hester after he was stopped, the qualifications of the officer to administer that test were not brought out at the hearing on the motion to suppress and, therefore, the HGN test results should be ignored. Hester also asserts, without any factual foundation, that the results of the rest of the field sobriety tests, which were administered to Hester, were insufficient to convince Officer Stutes that he had probable cause to believe that Hester had been driving under the influence.
It is clear from the testimony at the plea hearing by Officer Stutes that Hester had been properly stopped for several traffic violations, including unsafe lane changes and a stop sign violation. Following the stop, Officer Stutes performed the HGN test on Hester and testified as to the results, but both Officer Stutes and a backup officer who arrived at the scene, Sgt. Todd LeMaster, testified as to the rest of the field sobriety tests that were performed on Hester. Their testimony is concisely but thoroughly summarized by the trial court in its decision on the motion to suppress at the conclusion of the hearing, as follows:
 THE COURT: Well, there were four traffic violations mentioned. Any one of those could have justified the police officer in stopping the Defendant. So there was reasonable suspicion upon which to base the stop in this case.
 Then, the odor of alcohol was noticed by the officer, and that is sufficient cause, along with the four violations, to ask the Defendant to participate in the field sobriety tests and to justify detention for that purpose.
 The indicators testified to by the officer included, in addition to the four traffic violations, the odor of alcohol; the hesitation for five seconds before proceeding through the intersection could be an indicator, coupled with others, the five out of six points on the horizontal gaze nystagmus. I believe he testified to at least six points on the walk and turn, missing heel to toe three times on the first nine — I'm sorry — two times on the first nine, three times on the second nine, and, actually, there was a failure to follow instructions, which would be No. 6, and raised arms, which would be No. 7.
 On the one-leg stand, putting the foot down several times, messing up the finger or messing up the count 1 to 30 and raising his arms on the second and third of that test also would justify the officer's conclusion that he had failed that test, and jumbling his fingers and numbers on the finger dexterity test justifies the officer's conclusion that he failed that sobriety test.
 His testimony that he — or his comment to the officer that he had had a beer early in the evening, the glassy eyes, the holding on to the bed of the truck after getting out, again, could be normal behavior, but, coupled with these other things, can be a factor justifying the arrest. Slow and hesitant speech and the fact that the Defendant had been stopped earlier[1]
is even a factor in terms of the officer's observation at that time. The fact that he had four points on the horizontal gaze nystagmus could be considered in addition, which would suggest a continuation of drinking the second time, although that is not maybe necessarily true.
 But coupled with all of those factors that I just explained and those factors alone would justify the arrest in this case.
 I am overruling the motion to suppress as to the statements. Those were not taken while the Defendant was under arrest, but only during the initial investigation, and those will not be suppressed.
 So the motion to suppress is overruled in its entirety.
On appeal, Hester directly challenges only the HGN test results on the ground that Officer Stutes' qualifications for administering the test had not been put into evidence at the hearing. The problem with this argument, as pointed out by the State in its brief, is that Hester's counsel failed to object at the hearing as to the officer's "qualifications, ability to administer the HGN test and the actual technique used by the Officer in administering that test." Appellee brief, 3. Appellee argues that such failure to object constitutes a waiver by Hester of his right to claim any error on the issue. State v. Glaros
(1960), 170 Ohio St. 471, 11 O.O.2d 215. The State is correct. "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." People v.Brocato (1969), 17 Michigan App. 277, 305, 169 N.W.2d 483, 497.
Of course, if we could find that a failure to bring forth the credentials of Officer Stutes to administer and judge the HGN test results were plain error, we might have a different slant to the case. However, "notice of plain error under Crim.R. 52(b) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, syllabus. And finally, plain error cannot be found unless but for the error, the outcome of the trial clearly would have been otherwise. State v. Manley (1994), 71 Ohio St.3d 342, 347. The question is then, would the outcome of the hearing had been different if the HGN test results were ignored? The answer is clearly no. The litany of Hester's failures on all the other field sobriety tests as recited by the trial court in its summary as quoted above provides more than a complete substantiation of the court's refusal to suppress, even without the HGN test results. An officer may have probable cause to believe that a motorist was driving under the influence based upon the totality of the circumstances, which includes the results of the field sobriety tests, even ignoring the HGN test results. State v.Sanders (1998), 130 Ohio App.3d 789.
The assignment of error is overruled.
The judgment is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Amy H. Lewis
Jon Paul Rion
Hon. Susan L. Goldie
[1] Two hours earlier that same evening, Officer Stutes had stopped Hester for stop sign and signal violations, administered the HGN on him (he scored slightly better than on the later stop), "and told him to go ahead and head home for the evening." Tr. 22.